UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD MULLINS, | No. 21 Civ. _____ |
| Plaintiff, | |
| | **COMPLAINT** |
| -against- | |
| CITY OF NEW YORK, acting through the New York City Police Department and the Civilian Complaint Review Board; NYPD POLICE COMMISSIONER DERMOT SHEA; NYPD DEPUTY INSPECTOR BIENVENIDO MARTINEZ; NYPD ASSISTANT CHIEF JOSEPH B. VENEZIANO; CCRB EXECUTIVE DIRECTOR JONATHAN DARCHE; and CCRB DEPUTY CHIEF PROSECUTOR SUZANNE D. O'HARE, | |
| Defendants. | |

Plaintiff Edward Mullins, by and through his undersigned attorneys, alleges:

**PRELIMINARY STATEMENT**

1.     Plaintiff Edward Mullins ("Mullins") is a Sergeant in the New York City Police Department ("NYPD") and President of the Sergeants Benevolent Association ("SBA"), a municipal labor organization with approximately 13,000 members who are current and former NYPD sergeants.  Mullins is bringing this action because the NYPD and the Civilian Complaint Review Board ("CCRB"), and the individual Defendant government officials, are unlawfully retaliating against Mullins and seeking to punish him for exercising his First Amendment right to freedom of speech.  Mullins exercised his freedom of speech by speaking as a citizen and union

leader on the SBA Twitter account to criticize political positions of City officials. Defendants are unlawfully retaliating by threatening to impose NYPD disciplinary penalties against Mullins for his political statements. The threatened discipline includes suspending or terminating Mullins' status as an NYPD sergeant, which would disqualify him from continuing to serve as the elected President of the SBA. Defendants' actions are designed to suppress political speech protected by the First Amendment, insulate City leaders from political criticism, and unseat Mullins as the elected leader of the SBA union. Mullins seeks injunctive and declaratory relief to protect his First Amendment right to freedom of speech.

2.     Mullins is a leading public commentator and frequent critic of government officials who pursue policies or support legislation that threaten the health, safety, and effectiveness of police officers. He has spoken on many public media platforms – television, radio, Facebook, Twitter, email – to advocate for NYPD police sergeants and campaign for law enforcement on a local and national level. He is prominent in the national debate on police reform, publicly promoting changes to improve relations between the police and the community while protecting the safety of police officers and the community.

3.     The Defendants are violating Mullins' First Amendment rights and attempting to suppress his freedom of speech by pursuing NYPD disciplinary investigations and proceedings against him for three statements Mullins made as SBA President criticizing City officials. The Defendants have also tried to suppress Mullins' freedom of speech by interrogating him on his union activity and his speech as a private citizen, as well as subpoenaing the personal phone records of Mullins, his son, and the SBA without notice and opportunity to object.

4.     Each of the three Mullins statements for which the Defendants are seeking to punish him were made on the SBA Twitter account, and were made by Mullins as part of his core

- 2 -

responsibilities to the SBA to speak publicly on issues of concern to the public and SBA.  The SBA Twitter account is the SBA's public communications platform.  It is not supported by the NYPD or used by the NYPD to make NYPD statements.  Mullins speaks on the SBA Twitter account as the SBA President.  Under Mayoral Executive Order No. 75, as amended, Mullins, in his capacity as the SBA's elected President, devotes all his time to union activity, and is fully excused from and not required nor expected to perform any policing services such as police patrol.

5.      The first SBA Twitter statement for which the Defendants seek to punish Mullins is his criticism of Dr. Oxiris Barbot ("Barbot"), Mayor de Blasio's then Health Commissioner at the outset of the COVID pandemic.  The NYPD discovered that the Health Department was warehousing 500,000 protective masks and other personal protective equipment in New Jersey. When the Chief of Department at the time, Terence Monahan, asked for the masks to be issued to officers in the field, Barbot told Monahan that she did not give "two rats' asses about your cops." Mullins strongly criticized her derogatory reference to police officers and referred to her as a "bitch" for her disregard of police who are risking their lives to protect the community.  At the time, the City had failed to provide police with basic PPE to protect both the police and the public from Covid infection.  Health Commissioner Barbot later apologized to the NYPD, and acknowledged she was wrong and should not have dismissed the need to supply police officers with essential N-95 masks.  But now the Defendants are attempting to punish Mullins by suspending him from the NYPD because in their opinion Mullins was being "disrespectful" in his political speech and criticism on the SBA Twitter account of Barbot for her statement that she did not give "two rats' asses" about police.  Defendants' actions violate the First Amendment.

6.      The second SBA Twitter political statement for which the Defendants seek to punish Mullins is his comment on remarks made by New York City Councilman Ritchie Torres

("Torres") during Torres' campaign for Congress.  At a campaign press conference, Torres falsely accused the NYPD of a slowdown in making arrests, and blamed the police for increasing gun use by criminals.  Torres was using his attacks on the NYPD to fundraise for his political campaign. Mullins criticized Torres' anti-police rhetoric, and referred to him as a "first class whore" for falsely blaming the police for violence by criminals as part of his campaign for election.  Within hours, Torres responded with a post calling Mullins a racist and misogynist, and homophobic. Torres' post said "The @SBA is a bona fide hate group masquerading as a union.  The racism, misogyny and homophobia of Ed Mullins gives @realDonaldTrump a run for his money."[1]  A few days later, on September 8, 2020, Torres took to Twitter again, calling Mullins a "racist relic of the past".[2]  Defendants are now attempting to punish Mullins by suspending him from the NYPD because in their opinion Mullins was being "disrespectful" in his political speech and criticism of Torres on the SBA Twitter account.  Defendants' actions violate the First Amendment.

7.    The third SBA Twitter statement for which the Defendants seek to punish Mullins is his statement on the Mayor's handling of violent public protests, in which Mullins copied and commented on material placed in the public domain by a news reporter, Shawn Cohen, about the police arrest of the Mayor's daughter and her violation of City orders during public protests. Cohen's public report on what he called "Breaking" news included a photograph of part of the police arrest report.  Defendants claim information on the Mayor's daughter in the arrest report was confidential police information, and that Mullins should not have sent an SBA Twitter statement that included the photo of the arrest report that Cohen had already disclosed to the public.

---

[1]    @RitchieTorres, Twitter (Sept. 4, 2020, 2:44 PM), https://twitter.com/RitchieTorres/status/1301954387326259204.

[2]    @RitchieTorres, Twitter (Sept. 8, 2020, 8:52 PM), https://twitter.com/RitchieTorres/status/1303496508143214593.

But Mullins was commenting on publicly disclosed breaking news reports and photos made public by others.  Mullins has a First Amendment right to discuss information put in the public record by others, and has an obligation to the SBA members to comment on public news reports.  Cohen is an investigative reporter for the Daily Mail.  Mullins' SBA Twitter account copied Cohen's public news report, and questioned the Mayor's motivation to enforce the law during political protests and whether the Mayor's reluctance to allow NYPD officers to be properly equipped was influenced by his daughter's actions.  Defendants are now seeking to punish Mullins for publishing political commentary that included a public news report made by Cohen, a news reporter, on breaking news.  Defendants' actions violate the First Amendment.

## JURSDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because this action involves claims for deprivation of rights arising under the First Amendment and Fourteenth Amendment to the United States Constitution.

9.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391, because the headquarters of the NYPD is at 1 Police Plaza, New York, New York 10038, and the headquarters of the CCRB is at 100 Church Street, 10th Floor, New York, New York 10007.

## JURY DEMAND

10.      Mullins demands a trial by jury pursuant to Federal Rules of Civil Procedure 38, 39, and 57, on all issues so triable.

## PARTIES

11.      Plaintiff Mullins is, and at all times relevant to this Complaint has been, a sergeant with the NYPD.  Mullins has been President of the SBA since 2002.

12.     Defendant the City of New York ("the City") is a municipal entity created and authorized under the laws of the State of New York.  The City is being sued here for its actions taken through the NYPD and CCRB, which are City agencies.

13.     Defendant NYPD Police Commissioner Dermot F. Shea is, and at all times relevant to this Complaint was, the Police Commissioner for the NYPD.  He is sued in his official and individual capacity.  By law, Shea has the sole authority to determine the final disciplinary disposition and penalty imposed for police officer violations of the NYPD Patrol Guide, including the NYPD and CCRB disciplinary charges and specifications against Mullins accusing Mullins of violating NYPD Patrol Guide rules when Mullins made his statements on the SBA Twitter account. The disciplinary punishments for those alleged violations include suspending or terminating Mullins as an NYPD police officer.

14.     Defendant NYPD Deputy Inspector Bienvenido Martinez is, and at all times relevant to this Complaint was, Deputy Inspector of the NYPD and assigned to the Internal Affairs Bureau.  He is sued in his official and individual capacity.  Martinez signed the NYPD disciplinary charges and specifications against Mullins accusing Mullins of violating NYPD Patrol Guide rules when Mullins made his statements on the SBA Twitter account.

15.     Defendant NYPD Assistant Chief Joseph B. Veneziano is, and at all times relevant to this Complaint was, Assistant Chief of the NYPD.  He is sued in his official and individual capacity.  Veneziano signed and endorsed the NYPD disciplinary charges and specifications against Mullins accusing Mullins of violating NYPD Patrol Guide rules when Mullins made his statements on the SBA Twitter account.

16.     Defendant Lieutenant Timothy Magliente is, and at all times relevant to this Complaint was, a Lieutenant in the NYPD and assigned to the Internal Affairs Bureau.  He is sued

in his official and individual capacity.  Magliente interrogated Mullins in the NYPD investigation of Mullins that resulted in the NYPD disciplinary charges and specifications against Mullins accusing Mullins of violating NYPD Patrol Guide rules when Mullins made his statements on the SBA Twitter account.

17.     Defendant CCRB Executive Director Jonathan Darche is, and at all times relevant to this Complaint was, Executive Director of the CCRB.  He is sued in his official and individual capacity.  Darche signed and endorsed the CCRB's disciplinary charges and specifications against Mullins accusing Mullins of violating NYPD Patrol Guide rules when Mullins made his statements on the SBA Twitter account.

18.     Defendant CCRB Deputy Chief Prosecutor Suzanne D. O'Hare is, and at all times relevant to this Complaint was, a Deputy Chief Prosecutor of the CCRB.  She is sued in her official and individual capacity.   O'Hare signed the CCRB's disciplinary charges and specifications against Mullins accusing Mullins of violating NYPD Patrol Guide rules when Mullins made his statements on the SBA Twitter account.

## **FACTS**

### A.  As SBA President, Mullins publicly advocates for SBA interests and is authorized by Executive Order No. 75 to spend 100% of his time on SBA union business

19.     Mullins has served as the SBA's President since being elected in 2002.  As SBA President, Mullins advocates for the rights and interests of some 13,000 active and retired New York City Police Sergeants.  Mullins' core responsibilities to the SBA include speaking publicly on issues of concern to the public and SBA.

20.     In Executive Order No. 75, dated March 22, 1973 (as amended, "EO 75"), the Office of the Mayor authorized union representatives holding official union positions to be designated for release from regular duties so that they may spend their time on union business.

Union activities under EO 75 specifically include, among other things, holding press conferences and distributing press releases.  Since his election as SBA President in 2002, President Mullins has been an EO 75 union representative and has engaged exclusively in union activities while on full-release from his regularly assigned duties as an NYPD Sergeant.

21.     During his tenure as SBA President, Mullins has become a leading voice in the national discussion of policing.  Mullins has appeared on CNN, 60 Minutes, CNBC, Fox News, Newsmax, Spectrum News NY 1, and many major New York networks.  He has been interviewed by Laura Ingram, Anderson Cooper, Jeanine Pirro, Sean Hannity, Bill O'Reilly, and Joe Piscopo, as well as dozens of local cable news and radio shows and podcasts.  He is regularly cited and quoted in articles in The New York Times, Wall Street Journal, New York Daily News, New York Post and The Gothamist.  In August 2020, he was the subject of a featured article in New York Magazine titled *Sgt. Mullins Goes to War*, detailing his efforts to combat police reforms that threaten the safety of rank-and-file police officers.[3]

22.     Mullins is known locally and nationally as a strong advocate for NYPD sergeants and members of law enforcement across the country.  As SBA President, Mullins has also become known as a critic of Mayor Bill de Blasio, the NYPD Administration, and the New York City Council, for many of their positions on law enforcement and social agendas.

23.     The SBA uses traditional and modern public communication platforms, which include its Twitter account (@SBANYPD).  The SBA and President Mullins use the SBA Twitter account to post messages and notices to SBA members, and for commentary on political or law enforcement events and issues.  The SBA Twitter account has had up to fifty-eight thousand

---

[3]     *See* James D. Walsh, *Sgt. Mullins Goes To War*, N.Y. MAGAZINE (Aug. 19, 2020), https://nymag.com/intelligencer/article/ed-mullins-sba-nypd-union.html

(58,000) followers.  Several mainstream media outlets follow the account, and posts from the account have been routinely featured in major publications, including The New York Times, New York Post and the Daily News, as well as cable news shows and network news stations.  The SBA Twitter account is not supported by or affiliated with the City of New York or any City agency.

### B. Health Commissioner Barbot says she does not give "two rats' asses" about cops, and Mullins responds on the SBA Twitter account

24.     In March of 2020, during the height of the Covid-19 pandemic, NYPD officers faced a severe lack of Personal Protective Equipment to protect themselves from contracting and spreading the deadly disease.  Accordingly, the NYPD requested approximately 500,000 surgical masks from former New York City Health Commissioner Oxiris Barbot ("Barbot") to protect themselves and the residents of New York City.

25.     In late March, during a conversation with NYPD Chief of Department Terence Monahan, Barbot told Monahan that she could not fulfill the request and that "I don't give two rats' asses about your cops. I need them for others."  It was later revealed that the NYC Department of Health and Mental Hygiene had masks and other medical equipment stored in a warehouse in New Jersey, and NYPD officials were able to secure 250,000 additional masks by negotiating directly with City Hall.

26.     When Barbot's extraordinary remark was made public in May of 2020, it received a great deal of attention in local and national press.  Dozens of publications, including, but not limited to the New York Post, The Wall Street Journal, NBC New York, Business Insider, and Reuters, published articles recounting Barbot's appalling response to the NYPD's plea for PPE.[4]

---

[4]     *See* Melanie G. West, *Coronavirus Response Exposes Friction Between Top New York City Officials*, WALL ST. J. (May 14, 2020), https://www.wsj.com/articles/coronavirus-response-exposes-friction-between-top-new-york-city-officials-11589498686; Melissa Russo and Jonathan Dienst, *Calls for NYC Health Chief Oxiris Barbot To Resign After Rejecting NYPD PPE Request*, NBC NEW YORK (May 14, 2020),

27.     On May 13, 2020, at approximately 11:36 P.M., Mullins, in his capacity as a citizen and President of the SBA, posted a tweet on the SBA Twitter responding to Barbot's statement:

> Truth is this bitch has blood on her hands but why should anyone be surprised the NYPD has suffered under DeBlasio since he became Mayor.

> NYC health head rejected NYPD mask plea: "I don't give two rats' asses about your cops' nypost.com . . . Again, the NYPD fails to comment. Why did it take 2 months for it to be made public.  Why did Monaghan sit silent? He should of [sic] exposed her to the media.

28.     Mullins' tweet addressed Barbot's irresponsible position on protecting members of the NYPD and the public from spreading and contracting Covid-19 and Monahan's failure to expose Barbot, and quoted the New York Post's report that Barbot stated "I don't give two rats' asses about your cops."  These issues were important matters of public concern.

29.     Other prominent political figures also publicly commented on Barbot's remark, and many called for her resignation or removal, including former Rep. Max Rose (D-NY 11), Rep. Lee Zeldin (R-NY 1), NYC Councilman Joe Borelli, former Assemblywoman and now Rep. Nicole

---

https://www.nbcnewyork.com/news/local/calls-for-nyc-health-chief-oxiris-barbot-to-resign-after-rejecting-nypd-ppe-request/2416244/; Rhea Mahbubani, *"I Don't Give 2 Rats' Asses About Your Cops": New York City's Health Commissioner Reportedly Blew Off an NYPD Request For 500,000 Masks*, BUSINESS INSIDER (May 14, 2020), https://www.businessinsider.com/new-york-health-commissioner-dismisses-nypd-surgical-mask-need-coronavirus-2020-5; Maria Caspani and Rajesh K. Singh, *New York City Health Chief's Firing Urged Over Spat with Police On Masks*, REUTERS (May 14, 2020), https://www.reuters.com/article/us-health-coronavirus-usa-newyorkcity/new-york-city-health-chiefs-firing-urged-over-spat-with-police-on-masks-idUSKBN22Q3AR; Larry Celona et al., *NYC Health Head Rejected NYPD Mask Plea: "I Don't Give Two Rats' Asses About Your Cops"*, NY POST (May 13, 2020), https://nypost.com/2020/05/13/nyc-health-commissioner-wouldnt-supply-nypd-with-masks/.

Malliotakis (R- East Shore/South Brooklyn).[5] Like Mullins, Reps. Rose and Zeldin and Councilman Borelli used Twitter to disseminate their comments.[6]

30.     The President of the NYPD Police Benevolent Association ("PBA"), Patrick Lynch, and the President of the NYPD Detectives Endowment Association ("DEA"), Paul DiGiacomo, also joined in Mullins' and the SBA's calling for Barbot's resignation or removal because of her indifference toward the safety of NYPD officers. All three organizations took to Twitter to publicize their call for her removal.[7]

---

[5]     *See* Michael R. Sisak, *NYC Health Chief Under Fire for Alleged Remark About Police*, ABC NEWS (May 14, 2020), https://abcnews.go.com/Health/wireStory/nyc-health-chief-fire-alleged-remark-police-70688323; Maura Grunlund, *S.I. Pols, Police Unions Call for Firing of Health Honcho Over Alleged NYPD Remark Amid COVID-19*, SILIVE (May 14, 2020), https://www.silive.com/news/2020/05/si-pols-police-unions-call-for-firing-of-health-honcho-over-alleged-nypd-remark-amid-covid-19.html; Maria Caspani and Rajesh K. Singh, *New York City health chief's firing urged over spat with police on masks*, REUTERS (May 14, 2020), https://www.reuters.com/article/us-health-coronavirus-usa-newyorkcity/new-york-city-health-chiefs-firing-urged-over-spat-with-police-on-masks-idUSKBN22Q3AR.

[6]     *See* Michael R. Sisak, *NYC Health Chief Under Fire for Alleged Remark About Police*, AP NEWS (May 14, 2020), https://apnews.com/article/146654c274718e59013f96556e69391b; *see also* @RepLeeZeldin, Twitter (May 14, 2020, 10:53 AM), https://twitter.com/RepLeeZeldin/status/1260946316605210627?s=20; Adam Warner, *De Blasio Slams "Misogynist" Language After NYPD Union Calls City's Health Commissioner a "B****" Over Comment About Police*, AUDACY/1010 WINS (May 14, 2020), https://www.audacy.com/1010wins/articles/health-commissioners-comments-about-nypd-cause-outrage.

[7]     *See DEA, SBA Call for NY Health Commissioner To Be Fired After Alleged Comments Against the NYPD*, NEWS 12 (Oct. 4, 2020), https://bronx.news12.com/dea-sba-call-for-ny-health-commissioner-to-be-fired-after-alleged-comments-against-the-nypd-42130650; *Police Unions Call for Firing of City Health Commissioner*, SPECTRUM NEWS NY1 (May 14, 2020), https://www.ny1.com/nyc/all-boroughs/politics/2020/05/14/nyc-coronavirus-dr-oxiris-barbot-should-be-fired-police-unions-say-after-nypd-masks-comments.

31.     In the following weeks, Barbot issued a public apology to Monahan and the NYPD for her repugnant remark.  Barbot ultimately resigned from her position as Health Commissioner a few months later.  Both of these events were highly publicized in the local and national press.[8]

**C. Public protests turn violent, the press reports on the arrest of the Mayor's daughter, and Mullins responds on the SBA Twitter account**

32.     In late May 2020, during the Covid pandemic, New York City saw dozens of protests in response to the death of George Floyd in Minnesota.  Many of these protests became violent and destructive, with protestors throwing Molotov cocktails at police cars, frozen water bottles and rocks at police officers, and setting fires.  By the end of May, over two dozen officers were injured while responding to the protests, nearly 50 NYPD vehicles were damaged or destroyed, and dozens of retail stores had been looted and vandalized.  NYPD officers were on the front lines without clear or realistic directives from the City or the NYPD on how to respond to protest violence.  Governor Cuomo said Mayor de Blasio, who refused assistance from the National Guard, was underestimating the severity of the violent protests.  Mullins, as President of

---

[8]     Gloria Pazmino, *Health Commissioner Apologizes To NYPD for Heated Dispute Over Masks*, SPECTRUM NEWS NY 1 (May 19, 2020), https://www.ny1.com/nyc/all-boroughs/news/2020/05/18/city-health-commissioner-oxiris-barbot-issues-apology-to-nypd-over-comments-made-during-coronavirus-mask-supply-meeting; Erin Durkin, *City Health Commissioner Apologizes for NYPD Remark*, POLITICO (May 18, 2020), https://www.politico.com/states/new-york/albany/story/2020/05/18/city-health-commissioner-apologizes-for-nypd-remark-1284501; J. David Goodman, *N.Y.C. Health Commissioner Resigns After Clashes With Mayor Over Virus*, N.Y. TIMES (Aug. 4, 2020), https://www.nytimes.com/2020/08/04/nyregion/oxiris-barbot-health-commissioner-resigns.html#:~:text=Oxiris%20Barbot%2C%20resigned%20on%20Tuesday,to%20reopen%20schools%20and%20businesses; Amanda Eisenberg, *Barbot Steps Down As Health Commissioner*, POLITICO (Aug. 4, 2020), https://www.politico.com/states/new-york/albany/story/2020/08/04/barbot-steps-down-as-health-commissioner-1304941.

the SBA, was outspoken about the City's and NYPD's lack of planning and leadership, including their reluctance to adequately equip police officers responding to the violent protests.[9]

33.    On May 30, 2020, Mayor de Blasio's daughter was arrested while participating in a protest near Union Square.  She was reportedly part of a group throwing objects at police officers, though it was not reported that she herself had thrown anything at officers.  However, when given a lawful order to disperse, she refused to leave the area and was consequently arrested for unlawful assembly.  Chiara de Blasio's arrest was widely covered by the local and national media.[10]

34.    On May 31, 2020, at approximately 9:54 PM, Shawn Cohen ("Cohen"), an investigative reporter for the Daily Mail and former Police Bureau Chief of the New York Post, posted a tweet on his official Twitter account (@spccohen) reporting on the arrest of Chiara de

---

[9]    *See* Alan Feuer and Azi Paybarah, *Thousands Protest In N.Y.C., Clashing With Police Across All 5 Boroughs*, N.Y. TIMES (May 30, 2020), https://www.nytimes.com/2020/05/30/nyregion/protests-nyc-george-floyd.html;  Nathan Layne and Maria Caspani, *New York Governor Cuomo Says Police Failed to Do Their Job During Protests*, REUTERS (June 2, 2020), https://www.reuters.com/article/us-minneapolis-police-protests-new-york/new-york-governor-cuomo-says-police-failed-to-do-their-job-during-protests-idUSKBN2392CD

[10]    *See, e.g.*, Mark Sundstrom and Anthony DiLorenzo, *De Blasio Speaks On Daughter's Arrest In Manhattan Protests*, PIX 11 (June 1, 2020), https://pix11.com/news/local-news/manhattan/mayor-de-blasios-daughter-chiara-de-blasio-arrested-in-nyc-protests-saturday-police/; Mark Lennihan, *NYC Mayor Bill de Blasio's Daughter Was Arrested, As Protests In New York Continue to Turn Violent*, INSIDER (May 31, 2020), https://www.insider.com/chiara-de-blasio-arrested-new-york-black-lives-matter-2020-6; N'dea Yancey-Bragg and Joseph Spector, *NYC Mayor Bill de Blasio's Daughter Chiara de Blasio Arrested In George Floyd Protest*, USA TODAY (June 1, 2020), https://www.usatoday.com/story/news/nation/2020/06/01/george-floyd-protest-bill-de-blasios-daughter-arrested/5306706002/; Elizabeth Keogh et al., *NYC Mayor Bill de Blasio's Daughter Arrested In Manhattan Protest: Sources,* N.Y. DAILY NEWS (May 31, 2020), https://www.nydailynews.com/new-york/nyc-crime/ny-mayor-daughter-protest-arrest-20200601-ao3yphgrprfoth5r2aiqzcumtq-story.html;; *Bill de Blasio's Daughter Arrested While Protesting In Manhattan*, CBS NEWS (June 1, 2020), https://www.cbsnews.com/news/bill-de-blasio-daughter-chiara-arrested-manhattan-george-floyd-protests/.

Blasio under the headline: "Breaking: Mayor de Blasio's daughter, Chiara, was arrested protesting in Manhattan last night.  She gave cops Gracie Mansion, the mayor's official residence, as her address."  Attached to Cohen's tweet was a photograph of an NYPD arrest report.

35.    On May 31, 2020 at approximately 11:30 PM, well after Cohen posted his tweet, Mullins posted a "cut and paste" of Cohen's tweet on the SBA Twitter account with Mullins' political commentary on what was already in the public news:

> How can the NYPD protect the city of NY from rioting anarchist when the Mayors object throwing daughter is one of them.  Now we know why he is forbidding Mounted Units to be mobilized and keeping the NYPD from doing its job.

36.    The SBA tweet included the photo of Chiara de Blasio's arrest report, which had previously been posted by Cohen as public breaking news.[11]

37.    Mullins' tweet addressed important public concerns about Mayor de Blasio's failure to adequately equip NYPD officers to respond to violent protests, and about whether the Mayor's decisions were influenced by the fact that his daughter was a protester.

38.    Mullins was not the source or cause of the public disclosure of Chiara de Blasio's arrest report.  The NYPD has recently released documents to Mullins confirming that Mullins was not the source or cause of the initial public disclosure of Chiara de Blasio's arrest report.

**D.  Councilman Torres falsely accuses the police of a "slowdown," and Mullins responds on the SBA Twitter account**

39.    In September 2020, New York City Councilman Richard Torres and Brooklyn Borough President Eric Adams conducted a press conference outside City Hall where they called for an "independent investigation" into what they considered an illegal "slowdown" in police

---

[11]    The photo of the arrest report contained de Blasio's date of birth and other identifying information.  Upon learning that the information contained personal identifying information, the SBA immediately removed the post.  The post was on social media for approximately one hour.

responses to shootings and other violent crimes throughout the City.[12]  On that same day, Torres

posted a tweet which contained a video of the press conference in which he criticized the NYPD

for the spiking increase of gun-related violence in the streets, claiming that the NYPD was

intentionally making fewer gun arrests and solving fewer gun-related cases.  In the video, Torres

claimed that the NPYD had called for a slowdown on gun arrests and called for an investigation

into the Department to determine the extent the alleged slowdown had contributed to the increase

in violence.[13]  Torres' serious accusation was broadcast over numerous major media outlets.[14]

---

[12]    Robert Pozarycki, *Mean Tweet From Police Union Slanders Bronx Congress Candidate As "First Class Whore"*, AMNY (Sept. 4, 2020), https://www.amny.com/news/mean-tweet-from-police-union-slanders-bronx-congress-candidate-as-first-class-whore/;
Mr. Torres is quoted as saying:

> In 2020, we saw nearly a doubling of the surge in summertime shootings. The NYPD is making fewer gun arrests, solving fewer cases and responding more slowly to gun crimes in progress . . . The dramatic increase in gun violence can be best explained by the dramatic decrease in gun enforcement. That's why we are calling for an investigation to examine whether there is, in fact, a work slowdown, and to what extent has the work slowdown driven the growth in violence in New York City.

*Id*.

[13]    *See* @RitchieTorres, Twitter (Sept. 4, 2020 9:57 AM), https://twitter.com/RitchieTorres/status/1301882076350816258.

[14]    *See* Shant Shahrigian, *NYC Pol Calls for Investigation of Possible NYPD Work Slowdown*, N.Y. DAILY NEWS (Aug. 30, 2020), https://www.nydailynews.com/news/politics/ny-nypd-work-stoppage-investigation-ritchie-torres-20200830-2m3lgyjsgvgojepkzufax7phlu-story.html; *Is There An NYPD Work Slowdown? City Officials Want An Investigation*, ABC 7 N.Y. (Aug. 31, 2020), https://abc7ny.com/nypd-work-slowdown-nyc-crime-violence-shootings/6396831/;
Alyssa Paolicelli, *NYC Lawmakers Call for Probe Into Suspected NYPD Slowdown*, SPECTRUM NEWS NY 1 (Aug. 31, 2020), https://www.ny1.com/nyc/all-boroughs/news/2020/08/31/nyc-crime-rate-nypd-slowdown-concerns-ritchie-torres-eric-adams-call-for-investigation.

40.     At the time Torres made this accusation, proposed legislation calling for the City to "defund the police" was gaining attention, and the City was facing serious budget cuts, forcing the NYPD to pull officers off the street.[15]   All the while, the City's crime rates were steadily increasing in the midst of the pandemic, changes in the bail laws made it more likely that defendants accused of serious crimes would be returned to the community, and court operations were extremely limited with trials suspended.

41.     Given that Torres was running for Congress when he made his accusations, and raising money on the basis of these attacks on the integrity of the NYPD, Mullins issued a press release and posted a tweet to the SBA Twitter account condemning Torres for his accusations:

> He[re] we go America this is what a first class whore looks like RITCHIE TORRES.  Passes laws to defund police, supports criminals, & now because he's running for office he blames the police to protect what he voted for. Remember little Ritchie?  Meet LYING RITCHIE

42.     Within hours, Torres responded with a post calling the SBA a hate group, and calling Mullins racist, misogynist, and homophobic. Torres' post read: "The @SBA is a bona fide hate group masquerading as a union. The racism, misogyny and homophobia of Ed Mullins gives @realDonaldTrump a run for his money."[16]  A few days later, on September 8, 2020, Torres took to Twitter again, calling Mullins a "racist relic of the past."[17]

---

[15]     *See* Elina Tarkazikis, *Top Cop Blames Budget Slash for Slow Responses: "What Did You Think Was Going to Happen?"*, SPECTRUM NEWS NY 1 (Aug. 31, 2020), https://www.ny1.com/nyc/all-boroughs/public-safety/2020/08/31/top-cop-blames-budget-slash-for-slow-response-times-at-crime-scenes

[16]     *See* @RitchieTorres, Twitter (Sept. 4, 2020, 2:44 PM), https://twitter.com/RitchieTorres/status/1301954387326259204.

[17]     *See* @RitchieTorres, Twitter  (Sept. 8, 2020, 8:52 PM), https://twitter.com/RitchieTorres/status/1303496508143214593.

43.     The exchange between Plaintiff and Torres was followed by the city, state and national media, including on national cable news shows.

**E.  Defendants repeatedly interrogate Mullins for his union activity on the SBA Twitter account and threaten him with disciplinary charges that could lead to his removal as SBA President**

44.     Mullins has repeatedly been ordered to appear at the headquarters of the Internal Affairs Division of the NYPD where he has been interrogated regarding his union activity on the SBA Twitter account.  In each interrogation, prior to being questioned, Mullins was read warnings by Defendants Martinez and Magliente and was advised that he could not refuse to answer without risking immediate suspension and possible termination from the NYPD, which would effectively remove him from his position as SBA President.

45.     Prior to each interrogation, Mullins was advised by Defendants Martinez and Magliente that Patrol Guide Procedure No. 206-13 ¶ 12 was in effect, which states:

46.     "You will be asked questions specifically directed and narrowly related to the performance of your duties . . . I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties, you will be subject to departmental charges, which could result in your dismissal from the Police Department."[18]

47.     In addition, Mullins was advised by Defendants Martinez and Magliente that making a false or misleading statement could also lead to immediate suspension or termination pursuant to NYPD Patrol Guide Procedure No. 203-08, which states: "Intentionally making a false statement regarding a material matter will result in separation from the Department, absent extraordinary circumstances."

---

[18]     The full text of the NYPD Garrity Warnings can be found in the NYPD Patrol Guide Procedure No. 206-13.

48.     Mullins objected to the interrogations on the grounds that his speech was protected by the First Amendment and that he was speaking in his capacity as SBA President on a union platform at the time he made his public statements; that his statements were constitutionally protected free speech; that he was speaking as a private citizen on matters of public concern; and that he was not speaking as an NYPD employee at the time he made the posts.  Regardless, before each interrogation, Mullins was advised that his refusal to answer any questions put to him would result in his suspension and/or termination from the NYPD.

49.     In the event of either suspension or termination, Mullins' role as SBA President was directly threatened insofar as the by-laws of the SBA require its president to be a member in good standing of the NYPD – a fact known by Defendants.

50.     During the interrogations, Mullins was instructed that he was required to answer questions about the content, meaning, and intent of his union speech, including *inter alia* whether he personally posted the three statements made on the SBA's website and Twitter account, what he meant by the term "bitch," what he meant by the term "whore," and how he received the information contained in the de Blasio tweet.

51.     Rather than risk immediate suspension, termination and removal from his position as SBA President, Mullins answered the questions forced upon him over his standing objection that the interviews were obvious attempts to threaten his position as SBA President and chill his criticism of the Mayor and the Department.

52.     Mullins complied with the involuntary interrogation to preserve his duly-elected position as SBA President and to protect his membership from the void in leadership that would have been created by his immediate suspension, termination and removal.

53.     The NYPD also used administrative subpoenas to secretly obtain Mullins' phone records, phone records of Mullins' son, and phone records of SBA calls without giving either Mullins, his son, or the SBA any notice or opportunity to object to inspection of their personal telephone information.  When Mullins learned of these administrative subpoenas, it added to the pressure by the NYPD and CCRB to suppress political speech.

**F. The NYPD and CCRB charge Mullins with Patrol Guide violations that could lead to his removal as SBA President**

54.     On February 24, 2021, the NYPD filed departmental disciplinary charges against Mullins which allege:

> a)  In violation of Patrol Guide 203-10, Page 1, ¶ 3, 4, or 5: "Said Sergeant Edward Mullins assigned to Detective Borough Brooklyn South Operations, on or about May 31, 2020, improperly divulged or posted a portion of a Department arrest report on a social media site."
>
> b)  In violation of Patrol Guide 207-21, Page 1, ¶ 1: "Said Sergeant Edward Mullins assigned to Detective Borough Brooklyn South Operations, on or about and between May 31, 2020 and February 15, 2021, having become aware of a possible allegation of misconduct against another Member of Service, wrongfully failed to report said allegation to the Internal Affairs Bureau, as required."
>
> c)  In violation of Patrol Guide 203-10, Page 1, ¶ 3, 4, or 5: "Said Sergeant Edward Mullins assigned to Detective Borough Brooklyn South Operations, on or about May 31, 2020, wrongfully engaged in conduct prejudicial to the good order, efficiency, or discipline of the Department, in that said Sergeant improperly disclosed personal information of a person including home address, date of birth, or identification card number on a social media site."

55.     Defendants NYPD Deputy Inspector Martinez and Assistant Chief Veneziano signed the charges, which were filed in retaliation for Mullins' Twitter response to the arrest of Chiara de Blasio.  These formal specifications and charges were served on Mullins.

56.     On April 23, 2021, CCRB filed departmental charges and specifications against

Mullins which allege:

- In violation of Patrol Guide 203-22, Page 1, ¶ 3 and Patrol Guide 203-10, page 1, ¶ 5: "Sergeant Edward Mullins, on or about May 31, 2020, at approximately 2330 hours, while assigned to DBBS OP and on duty, abused his authority as a member of the New York City Police Department, in that he published a tweet disseminating information contained in the arrest report of Otto Quashie, formerly known as Chiara DeBlasio, without sufficient legal authority."

- In violation of Patrol Guide 203-10, Page 1, ¶¶ 1, 5: "Sergeant Edward Mullins, on or about May 13, 2020, at approximately 2036 hours, while assigned to DBBS OP and on duty, made disrespectful remarks regarding the gender of Oxiris Barbot, in that he published a tweet calling Oxiris Barbot a 'bitch.'"

- In violation of Patrol Guide 203-10, Page 1, ¶¶ 1, 5: "Sergeant Edward Mullins, on or about September 4, 2020, at approximately 1200 hours, while assigned to DBBS OP and on duty, made disrespectful remarks regarding the perceived sexual orientation of Ritchie Torres, in that Sergeant Mullins published a tweet calling Ritchie Torres a 'first class whore.'"

57.     CCRB Deputy Chief Prosecutor Suzanne D. O'Hare and CCRB Executive Director

Jonathan Darche both signed these charges and specifications.

58.     In these disciplinary charges, Mullins has been charged with violating Section 203-

10 ¶¶ 1, 3, 4 or 5 of the Patrol Guide, which prohibit, in relevant part:

1.  Using discourteous or disrespectful remarks regarding another person's ethnicity, race, religion, gender, gender identity/expression, sexual orientation, or disability.

    a.  Members shall address the public using pronouns, titles of respect, and preferred name appropriate to the individual's gender identity/expression as expressed by the individual. The term "gender" shall include actual or perceived sex and shall also include a person's gender identity, self-image, appearance, behavior, or expression, whether or not that gender identity, self-image, appearance, behavior, or expression is different

from that traditionally associated with the legal sex assigned to that person at birth.

3.   Divulging or discussing official Department business, except as authorized.

4.   Manipulating manually or electronically, transmitting in any form, or distributing any official Department recorded media or recorded media coming into possession of the Department as evidence or for investigative purposes except as authorized for official department business.

****

5.   Engaging in conduct prejudicial to good order, efficiency, or discipline of the Department."

59.   The sections of Patrol Guide Section 203-10 that Defendants have charged Mullins with, particularly ¶ 1 which prohibits "discourteous or disrespectful remarks," are unconstitutionally vague as applied here.  Subsection (a) of ¶ 1 provides no clarity, and mandates members of service to use "titles of respect" without giving any clear definitions or examples of what is prohibited.

60.   Because of the vagueness of this Patrol Guide section, Mullins could not have understood that using the terms "bitch" and "whore," in the context and SBA union communications in which he used them, could expose him to departmental discipline.

61.   The vagueness of this Patrol Guide Section 203-10 enables the NYPD to impose discipline in an arbitrary and discriminatory manner.  The NYPD is utilizing a vague and nonspecific Patrol Guide definition to improperly discipline Mullins for exercising his right as a union leader to speak on matters of public concern through a union media platform.

62.   Plaintiff has been threatened with discipline based on statements protected by the First Amendment, made by him while acting in his capacity as SBA President.  He has been threatened with suspension or termination for refusing to answer questions about his union speech; now he is facing formal discipline for statements made by him while speaking as a union leader

on matters of obvious public concern on a union media platform.  The efforts by the City to threaten Plaintiff for the free exercise of union speech and for advocating on behalf of his members are purely retaliatory and designed to chill the free speech rights of a critic of government officials.

63.     The NYPD has scheduled a disciplinary trial for Mullins for August 4, 2021 in which it plans on prosecuting Mullins for speech made while he was acting as SBA President. Each charge filed against Mullins carries a potential twenty-day penalty and, under the newly implemented NYPD disciplinary rules, can result in Mullins' suspension or termination from his position as a police sergeant, thereby effectively removing him from his position as the elected SBA President.

## FIRST CAUSE OF ACTION

**Unlawful Retaliation for Speech Protected by the First Amendment to the Constitution – Against All Named Defendants**

64.     Mullins repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set herein.

65.     Mullins wrote and posted the three tweets at issue in his capacity as the SBA President and as a private citizen.

66.     Mullins' core responsibilities to the SBA include speaking publicly on issues of concern to the public and SBA

67.     Mullins' statements in these tweets were not made during the course of executing his official job duties as an NYPD sergeant.

68.     The statements made by Mullins were made when he was on full-release from his NYPD responsibilities and as a recognized union representative pursuant to Executive Order 75.

69.     Each of the three statements at issue address issues of public concern, including issues of inadequate police response to violent protesting throughout the city following the death

of George Floyd, the remarks made by then-NYC Health Commissioner Oxiris Barbot that she did not give "two rats' asses about your cops" and providing PPE for NYPD officers, and NYC Councilman Ritchie Torres' irresponsible accusation of the NYPD's alleged "work slowdown" contributing to an increase in violence throughout the City.

70.     As a direct result of Mullins' public criticism of the Department and Mayor de Blasio and his administration, the Defendants retaliated against Mullins by subjecting him to repeated interrogations and investigations related solely to the content of his speech, filing improper disciplinary charges against him, and threatening him with suspension, loss of benefits and termination, and the loss of his office as President of the SBA.

71.     Defendants' unlawful actions have chilled Mullins' speech.  The SBA is known for its unapologetic and outspoken support for law enforcement.  The SBA's messaging has become diluted as a result of Defendants' actions described herein.

72.     The NYPD and CCRB charges and specifications and investigation against Mullins are officially sanctioned by the City.  The charges and specifications themselves, and the potential punishment against Mullins if they are upheld, threaten Mullins with irreparable harm and violate his First Amendment right to freedom of speech.

73.     By their conduct as herein described, Defendants deprived Plaintiff of rights, remedies, privileges and immunities guaranteed by the First Amendment to every citizen of the United States.

## **PRAYER FOR RELIEF**

74.     Mullins demands judgment in his favor against Defendants:

    a.   Declaring that Defendants' acts violate Mullins' First Amendment rights to speak on public issues;

b.  Preliminarily and permanently enjoining Defendants from any further acts depriving or threatening to deprive Mullins of his First Amendment rights to speak on public issues;

c.  Statutory attorney's fees, interest, costs and disbursements; and

d.  For such other and further legal, equitable or other relief as the Court finds just and proper.

Dated: June 25, 2021

THE QUINN LAW FIRM, PLLC

*Andrew C. Quinn*

_____
Andrew C. Quinn, Esq.
Attorneys for Plaintiff
399 Knollwood Road, Suite 220
White Plains, NY 10603
Tel. (914) 997-0555
Fax (914) 997-0550
aquinn@quinnlawny.com


DLA PIPER LLP

*Anthony P. Coles*

_____
Anthony P. Coles
Attorneys for Plaintiff
1251 Avenue of the Americas
New York, New York 10020
Tel. (212) 335-4844
Fax (212) 884-8644
anthony.coles@dlapiper.com